**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MITZI PASCH ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. |
| vs. ) | |
| ) | Div. |
| ROBERT WILSON, ) | |
| ONDOC, LLC ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff and states as follows:

## NATURE OF THE ACTION

1. This is an action for damages, punitive damages and attorneys' fees and costs arising out of Defendants' sale of securities by use of false and untrue statements. Plaintiff alleges claims under state and federal securities laws, as well as related common law claims for fraud and negligent representation.

## THE PARTIES

1. Plaintiff Mitzi Pasch ("Mitzi") is a citizen of the State of Missouri.

2. Defendant Robert Wilson ("Wilson") is a citizen of the State of Pennsylvania.

3. Defendant OnDoc, LLC is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. OnDoc provides individuals with online access to discount prescriptions and to medical professionals for advice and consultation for a monthly fee.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. This Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts, transactions, or courses of business constituting the sales of these securities occurred in this District.

6. This Court has personal jurisdiction over the Defendants because the Defendants solicited Mitzi's investment in OnDoc by communications directed to Mitzi in St. Louis, including at least one video conference where Mitzi was present in St. Louis. In addition, upon information and belief, OnDoc has transacted and transacts business with Missouri residents.

## FACTUAL BACKGROUND

7. OnDoc is the brainchild of Defendant Robert Wilson. Mitzi now believes that Wilson incorporated OnDoc as a Pennsylvania limited liability company in February 2018. However, when Wilson solicited Mitzi's investment in OnDoc, Wilson represented that OnDoc was a corporation and offered Mitzi the "opportunity" to acquire common stock. In any event, OnDoc markets itself as an entity that provides individuals with online access to discount prescriptions and to medical professionals for advice and consultation for a monthly fee. OnDoc is structured as a typical multi-level or pyramid marketing operation, under which distributors are encouraged to recruit new distributors and are compensated based on their own production, the production of new distributors, and so on.

8. Beginning in the late Summer or Fall of 2018, Wilson solicited Mitzi's investment in OnDoc through a series of false and fraudulent statements, including without limitation:

(a) In October 2018, Wilson represented to Mitzi (and others) that an NFL quarterback who played for the North Carolina franchise had donated $500,000 toward the purchase of OnDoc vouchers for poor and underprivileged families through OnDoc's charitable arm, OnDoc Cares.  If true, the quarterback's participation would have provided significant public gravitas and operating capital for OnDoc.  Upon information and belief, the quarterback did not make the donation;

(b) Also in October 2018, Wilson represented to Mitzi (and others) that the Chief Executive Officer of Stream, a highly successful direct sales organization, had endorsed OnDoc and the OnDoc program.  Upon information and belief, the Stream CEO did not and has never endorsed OnDoc;

(c) On November 4, 2018, Wilson represented that the accounting firm of Ernst & Young had opined that the going concern value of OnDoc was $20.4 million dollars.  Upon information and belief, Ernst & Young has never valued OnDoc at $20.4 million dollars;

(d) On November 4, 2018, Wilson represented that Ernst & Young estimated that OnDoc would have a total of 125,000 clients by fiscal year 2019;

(e) Wilson misrepresented the number of OnDoc clients on various occasions.  For example, on November 6, 2018, in connection with a virtual power point presentation, Wilson represented that OnDoc had already exceeded the customer levels projected in a power point presentation for the first and second quarters of 2019, which was not true.  During the same power point presentation, still prior to Mitzi making her first investment in OnDoc, Wilson

3

represented (i) that OnDoc had at least 2400 customers and (ii) that the Federal Trade Commission had given a glowing endorsement of OnDoc, predicting that OnDoc would have 175,000 customers by the end of fiscal year 2019;

(f) On or about November 4, 2018, Wilson represented to Mitzi that, if she would invest in OnDoc, her son would be awarded a finder's fee equal to a 2.5% shareholding interest in OnDoc. Upon information and belief, Wilson never had any intention of awarding Mitzi's son a finder's fee and never did;

(g) Wilson provided Mitzi with a Confidential Private Placement Memorandum dated November 4, 2018 in which he represented:

(i) That OnDoc was soliciting the purchase of "up to 50,000 Shares of Common Stock at $2.00 per share" even though Wilson knew that OnDoc was a limited liability company whose ownership was represented by membership interests, not shares of common stock;

(ii) That OnDoc was initially capitalized by, among other things, a $100,000 capital investment by Wilson;

(iii) That an individual named Leslie Siegel owned 50,000 shares of OnDoc common stock when no person owned any "stock" in OnDoc and, upon information and belief, Leslie Siegel never owned any "stock" or even any membership interest in OnDoc;

(iv) That other individuals, including Wilson, also owned shares of OnDoc "stock" when no person owned any "stock" in OnDoc;

(v) That OnDoc had a board of "directors" who would serve "until their successors have been elected or qualified at an annual

4

shareholders' meeting when, in fact, OnDoc did not operate with a board of directors and, for the reasons previously stated, the board would never be elected by any OnDoc "shareholders."

(h) On November 14, 2018, Wilson represented that Leslie Siegel was a "board member" of OnDoc, which was not true;

(i) On November 14, 2018, Wilson represented to Mitzi that Mark and Shannon Williams had invested in OnDoc. Upon information and belief, Mark and Shannon Wilson have never invested in OnDoc.

(j) On or about November 15, 2018, Wilson provided Mitzi with a Unit Purchase Agreement in which he:

    (a) Warranted and represented in various places that he owned common stock in OnDoc, "is a Shareholder in OnDoc, LLC, who is the record owner of outstanding share of the capital stock of OnDoc, LLC" and the like;

    (b) Represented that, following Mitzi's purchase of OnDoc "stock," Mitzi would receive "certificates representing the Corporation's Shares".

(k) On November 18, 2018, Wilson provided Mitzi with a *different* Confidential Private Placement Memorandum in which he:

    (i) Misrepresented in various places that OnDoc had issued common stock and was offering shares of that stock for sale;

    (ii) Repeated the misrepresentation that he had invested $100,000;


shareholders' meeting when, in fact, OnDoc did not operate with a board of directors and, for the reasons previously stated, the board would never be elected by any OnDoc "shareholders."

(h) On November 14, 2018, Wilson represented that Leslie Siegel was a "board member" of OnDoc, which was not true;

(i) On November 14, 2018, Wilson represented to Mitzi that Mark and Shannon Williams had invested in OnDoc. Upon information and belief, Mark and Shannon Wilson have never invested in OnDoc.

(j) On or about November 15, 2018, Wilson provided Mitzi with a Unit Purchase Agreement in which he:

    (a) Warranted and represented in various places that he owned common stock in OnDoc, "is a Shareholder in OnDoc, LLC, who is the record owner of outstanding share of the capital stock of OnDoc, LLC" and the like;

    (b) Represented that, following Mitzi's purchase of OnDoc "stock," Mitzi would receive "certificates representing the Corporation's Shares".

(k) On November 18, 2018, Wilson provided Mitzi with a *different* Confidential Private Placement Memorandum in which he:

    (i) Misrepresented in various places that OnDoc had issued common stock and was offering shares of that stock for sale;

    (ii) Repeated the misrepresentation that he had invested $100,000;

    (iii)  Provided without explanation a list of "shareholders" that no longer included Leslie Siegel and Mark and Shannan Williams;

    (iv)  Repeated his prior misrepresentations relating to the existence of a "board of directors."

  9.  Wilson's representations set forth in paragraph 8 were false and known to be false when made and specifically designed to induce Mitzi to purchase "stock" in OnDoc by, among other things, attempting to create the impression that OnDoc was structured and operated with a level of sophistication and corporate formality that, in fact, did not exist.

  10.  The Unit Purchase Agreement contemplated that Mitzi would purchase her OnDoc shareholding interest by paying $100,000 in cash and $100,400 in the form of a "non-interest loan."

  11.  In reliance upon Wilson's representations, which were material to her decision to invest, on November 23, 2018, Mitzi wired $80,000 to an account titled "RW Direct" toward her purchase of what she thought was OnDoc common stock.

  12.  On December 18, 2018, Mitzi wired $20,000 to Wilson's RW Direct account.

  13.  In January 2019, Wilson pressed Mitzi for the balance of her "investment," representing to her that it was necessary to pay for the following:

    Sound Concepts App - 10k

    Website- 20k

    Legal, Insurance, Travel, Marketing- 40k

    Event- 25k

  14.  Based upon Wilson's representations and continued assurances that OnDoc was or would be profitable because it was being managed by competent personnel in a

6

professional manner, and with the support and formality of a corporate structure and administration, Mitzi delivered a check $100,400 made payable to RW Direct on Janaury 31, 2019.  Upon information and belief, Wilson did not apply the second traunch of Mitzi's money as represented and never intended to do so.

15. Wilson made all of his misrepresentations in his capacity as a manager and/or officer and/or principal of OnDoc and on behalf of and for the benefit of OnDoc.

## COUNT I

### RSMo §409.5-509(b)

16. Mitzi re-alleges the allegations of paragraphs 1-15.

17. Mitzi's interest in OnDoc, whether a shareholding interest or membership interest in a limited liability company, constitutes a security under RSMo §409.1-102(28) and the Federal Securities Exchange Act of 1934.

18. Defendants Wilson and OnDoc made untrue statements of material facts and omitted material facts necessary under the circumstances to keep the statements that were made from being misleading in connection with the sale of securities to Mitzi.

19. Defendants acted knowingly and with the specific intent to deceive and defraud Mitzi and Defendants' misrepresentations and omissions were material to Mitzi's decision to invest in OnDoc.

20. Mitzi justifiably relied on Defendants' untrue statements of a material fact and Defendants' omission to state necessary material facts in selling securities.  Mitzi did not know of the untruths and omissions.

21. Defendants' misrepresentations and omissions caused Mitzi to suffer damages.

22. Defendants made the misrepresentations and omissions with malice and with a conscious disregard for the rights of Mitzi such that Mitzi is entitled to an award of punitive damages.

23. Mitzi is entitled to recover her reasonable attorneys' fees and costs pursuant to RSMo §409.5-509(b)(1).

## COUNT II

### 15 U.S.C. §78j; 17 CFR 240.10b-5

24. Mitzi re-alleges the allegations of paragraphs 1-23.

25. Defendants Wilson and OnDoc made untrue statements of material facts and omitted material facts necessary under the circumstances to keep the statements that were made from being misleading in connection with the sale of securities to Mitzi.

26. Defendants acted knowingly and with the specific intent to deceive and defraud Mitzi and Defendants' misrepresentations and omissions were material to Mitzi's decision to invest in OnDoc.

27. Mitzi justifiably relied on Defendants' untrue statements of a material fact and Defendants' omission to state necessary material facts in selling securities.  Mitzi did not know of the untruths and omissions.

28. Defendants' misrepresentations and omissions caused Mitzi to suffer damages.

29. Defendants made the misrepresentations and omissions with malice and with a conscious disregard for the rights of Mitzi such that Mitzi is entitled to an award of punitive damages.

## COUNT III

### Common Law Fraud

30. Mitzi re-alleges the allegations of paragraphs 1-29.

31. Defendants Wilson and OnDoc made untrue statements of material facts and omitted material facts necessary under the circumstances to keep the statements that were made from being misleading in connection with the sale of securities to Mitzi.

32. Defendants acted knowingly and with the specific intent to deceive and defraud Mitzi and Defendants' misrepresentations and omissions were material to Mitzi's decision to invest in OnDoc.

33. Mitzi had the right to rely upon Defendants and justifiably relied on Defendants' untrue statements of a material fact and Defendants' omission to state necessary material facts in selling securities. Mitzi did not know of the untruths and omissions.

34. Defendants' misrepresentations and omissions caused Mitzi to suffer damages.

35. Defendants made the misrepresentations and omissions with malice and with a conscious disregard for the rights of Mitzi such that Mitzi is entitled to an award of punitive damages.

### COUNT IV

### Negligent Misrepresentation

36. Mitzi re-alleges the allegations of paragraphs 1-35.

37. Defendants made the misrepresentations and omissions in the course of their business with the intent to influence and affect Mitzi's decision to invest in an ongoing business enterprise.

38. In the alternative, Defendants failed to exercise reasonable care to determine the truth or falsity of their statements and omissions and were thereby negligent.

39. As a result of Defendants' negligence, Mitzi was damaged.

40. Defendants made the misrepresentations and omissions with malice and with a conscious disregard for the rights of Mitzi such that Mitzi is entitled to an award of punitive damages.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff Mitzi Pasch requests that the Court enter Judgment in her favor and against Defendants for:

A. $150,400 plus pre-judgment and post-judgment interest;

B. For her attorneys' fees and costs;

C. For punitive damages in an amount to be proved at trial; and

D. For such other and further relief as the Court deems proper.

STONE, LEYTON & GERSHMAN,
A PROFESSIONAL CORPORATION

By: /s/Paul J. Puricelli
Paul J. Puricelli     #MO32801
7733 Forsyth Blvd.
Suite 500
St. Louis, MO  63105
(314) 721-7011
(314) 721-8660 (fax)
pjp@stoneleyton.com

*Attorneys for Plaintiff*